UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JOSE ESPINEL and
LUISA ESPINEL,

    Plaintiffs,

v.                                          CASE NO. 8:17-cv-2628-T-23-JSS

BANK OF AMERICA, N.A.,

    Defendant.
_____/

## **ORDER**

    Almost a decade ago, the Treasury Department introduced the Home Affordable Modification Program, which required a participating bank to "use reasonable efforts" to modify the mortgage of a person in default or reasonably likely to default. The United States agreed to compensate the bank for part of the loss attributable to each modification. (Complaints at ¶¶ 10–11) Under the program, an eligible mortgagor agreed to pay a reduced note for a "trial period" of three months; if the mortgagor paid each month, the modification became permanent. (Complaints at ¶ 12) Bank of America participated in the program and received tens of thousands of requests for modification.

    Between 2009 and 2012, hundreds (or more) of mortgagors sued Bank of America for allegedly failing to diligently process the mortgagors' requests for modification. (Complaints at ¶ 31) Also, many of the mortgagors alleged that Bank

of America misrepresented or failed to disclose important information about the program.  The Judicial Panel on Multi-District Litigation centralized the actions in *In re: Bank of America Home Affordable Modification Program (HAMP) Contract Litigation* (1:10-md-2193-RWZ) (D. Mass. Oct. 12, 2010) (the MDL).

A year after the MDL began, a relator sued Bank of America in the Eastern District of New York and alleged a scheme to defraud the United States.  *United States ex rel. Gregory Mackler v. Bank of America, N.A.* (1:11-cv-3270-SLT) (E.D.N.Y. July 7, 2011).  The complaint, which remained under seal until February 24, 2012, alleged that Bank of America misled borrowers about their eligibility for the program and about the status of their loan-modification requests.  Later in 2012, the United States intervened and voluntarily dismissed the action because of a settlement with Bank of America.

Between October 30, 2017, and November 3, 2017, more than seventy plaintiffs sued Bank of America in separate actions in the Middle District of Florida and alleged common law fraud.  Although differing in minor respects, the complaint — which copy swaths from the *qui tam* complaint — appear materially identical.  Each complaint alleges four misrepresentations or omissions between 2009 and 2012: First, Bank of America failed to mention that a "reasonably foreseeable" danger of default might qualify a mortgagor for modification; second, Bank of America stated that the mortgagor failed to provide Bank of America with the documents necessary to complete the modification; third, Bank of America orally

- 2 -

told the mortgagor that Bank of America approved the requested modification; and fourth, Bank of America charged a "fraudulent" inspection fee.  This order describes the respective allegations as the foreseeable-default claim, the document claim, the oral-approval claim, and the inspection-fee claim.

Moving to dismiss the actions under Rule 12(b)(6), Federal Rules of Civil Procedure, Bank of America argues that the four-year fraud limitation, the "banking statute of frauds," and the economic-loss rule bar the claims.  Also, Bank of America argues that the claims violate Rule 9(b), which requires a plaintiff to allege "with particularity the circumstances constituting fraud."  Because the complaints appear materially identical and because the motions assert the same arguments, this order resolves the motion to dismiss in each action.[1]

## DISCUSSION

**I. The applicable limitation**

Section 95.11(3)(j), Florida Statutes, provides a four-year limitation for fraud. Under Section 95.031(2)(a), the time within which to sue begins when the plaintiff discovers the fraud or reasonably should have discovered the fraud through due diligence.  A claim warrants dismissal only if the expiration of the limitation is "apparent from the face of the complaint."  *La Grasta v. First Union Secs., Inc.*,

---

[1] This order applies to *Gonzalez*, 5:17-cv-519; *Varela-Pietri*, 8:17-cv-2534; *Salazar*, 8:17-cv-2535; *Diaz*, 8:17-cv-2537; *Rostgaard*, 8:17-cv-2538; *Mosquea*, 8:17-cv-2551; *Peralta*, 8:17-cv-2580; *Rodriguez*, 8:17-cv-2583; *Ruiz*, 8:17-cv-2586; *Santos*, 8:17-cv-2588; *Acosta*, 8:17-cv-2592; *Blanco*, 8:17-cv-2593; *Garcia*, 8:17-cv-2602; *Zalazar*, 8:17-cv-2603; *Perez*, 8:17-cv-2623; *Moncada*, 8:17-cv-2625; *Espinel*, 8:17-cv-2628; *Ocampo*, 8:17-cv-2631; *Carmenates*, 8:17-cv-2635.

358 F.3d 840, 845 (11th Cir. 2004). Determining when a plaintiff reasonably should have discovered fraud often requires fact-finding. *Puchner v. Bache Halsey Stuart, Inc.*, 553 So. 2d 216, 217 (Fla. 3d DCA 1989) (Ferguson, J.) (collecting decisions).

Asserting without citation to authority that this order "can take judicial notice" of the "HAMP Supplemental Directive" (Motions at pp. 9–10), Bank of America argues that the Treasury Department's publication of the "Supplemental Directive" permitted the plaintiffs "to discover [] for [them]selves" the program's eligibility requirements. (Motions at p. 10) But an order resolving a motion to dismiss typically evaluates only the complaint and an "instrument" that is attached to the complaint or to the motion to dismiss, that is central to the plaintiff's claim, and that is indisputably authentic. *Horsley v. Feldt*, 304 F.3d 1125, 1133–35 (11th Cir. 2002). Neither alleged in, nor attached to, a complaint or a motion, the "Supplemental Directive" warrants no consideration at this moment.[2]

Also, the decisive and disputed fact in this instance is not the existence of the document or the details or truth or accuracy of the document's content but the effect, if any, of the "Supplemental Directive" in notifying the plaintiffs about Bank of America's alleged misrepresentation and consequently triggering the applicable limitation. Nothing in the complaints suggests that Bank of America directed the plaintiffs' attention to the Treasury Department's website, nothing in the complaints

---

[2] A footnote in Bank of America's motions links to the document, which is hosted on the website "hmpadmin.com." The website describes itself as an "administrative website for servicers." "Servicers" means banks, not consumers.

alleges a basis to impute to every mortgagor knowledge of the content of the "Supplemental Directive," and nothing in the complaints shows that, even if directed to the website, a reasonably diligent mortgagor would locate the "Supplemental Directive" on the Treasury Department's website (for example, nothing in the complaints shows the prominence or obscurity of the document on the website). In this circumstance, the effect of the "Supplemental Directive" is not a subject for judicial notice.

Additionally, a review of the "Supplemental Directive" establishes no reasonable expectation by Bank of America that a mortgagor will read and comprehend the document. In fact, the second page of the "Supplemental Directive" — a lengthy document replete with financial and legal jargon but lacking a plain-and-simple summary to aid the understanding of a mortgagor — states that the Treasury Department published the document to "help servicers implement" the program. "Servicers" are banking professionals and not unsophisticated mortgagors. In sum, the "Supplemental Directive" fails at this time for several reasons to establish the expiration of the fraud limitation.

Citing *Westchester Corp. v. Peat, Marwick, Mitchell & Co.*, 626 F.2d 1212 (5th Cir. 1980), which resolves a limitation dispute by summary judgment, Bank of America argues that "other borrowers [] managed to" sue Bank of America several years ago and that the plaintiffs "could have done likewise." (Motions at p. 10)

Although suggesting some tardiness, the pendency of the MDL is not equivalent to a bar by the applicable limitation.

In several actions, the limitation bars the inspection-fee claim. A reasonably diligent mortgagor regularly reviews his statements to confirm that a bank charged no improper fee. If the review reveals an impermissible charge, the reasonably diligent mortgagor inquires promptly about the charge rather than waiting years to sue. In nine actions, the plaintiffs fail to allege that the bank charged an inspection fee after 2012; the four-year limitation bars the inspection-fee claim in these actions.[3] In four actions, the plaintiffs allege that Bank of America last charged an inspection fee in 2013; a limitation might bar these claims, but the plaintiffs' failure to allege the day of the fee precludes that determination.[4] In the remaining actions, the four-year limitation appears not to bar the inspection-fee claim.

**II. "Banking statute of frauds"**

Section 687.0304, Florida Statutes, requires that a signed and written document evidence an agreement "to lend or forbear repayment of money, goods, or things in action, to otherwise extend credit, or to make any other financial accommodation." A debtor cannot successfully sue a creditor over a credit

---

[3] 8:17-cv-2635, Doc. 1 at ¶ 52 (no fee after 2010); 8:17-cv-2631, Doc. 1 at ¶ 52 (no fee after 2010); 8:17-cv-2602, Doc. 1 at ¶ 53 (no fee after 2010); 8:17-cv-2592, Doc. 1 at ¶ 52 (no fee after 2010); 8:17-cv-2588, Doc. 1 at ¶ 52 (no fee after 2012); 8:17-cv-2583, Doc. 1 at ¶ 52 (no fee after 2010); 8:17-cv-2580, Doc. 1 at ¶ 52 (no fee after 2011); 8:17-cv-2534, Doc. 1 at ¶ 52 (no fee after 2012); 8:17-cv-2551, Doc. 1 at ¶ 52 (no fee after 2010).

[4] 8:17-cv-2628; 8:17-cv-2537; 8:17-cv-2586; 8:17-cv-2623.

agreement absent the signed and written document. In addition to precluding an action for breach of contract, Section 687.0304 bars a fraud claim based on a creditor's representation that the creditor will accommodate a debtor's inability to pay a debt in accord with the agreed schedule. *See, e.g.*, *Coral Reef Land Dev., LLC v. Duke Realty Ltd. P'ship*, 45 So. 3d 897 (Fla. 3d DCA 2010) (Salter, J.); *940 Lincoln Road Assocs., LLC v. 940 Lincoln Road Enter., Inc.*, --- So. 3d ---, 2017 WL 6598582 (Fla. 3d DCA Dec. 27, 2017) (Scales, J.).

Bank of America argues (Motions at pp. 6–8) that the statute of frauds bars all four claims, and the plaintiffs fail to respond to Bank of America's argument. In this instance, only the oral-approval claim appears an attempt to enforce an oral credit agreement.[5] The remaining claims appear based on a duty other than under an oral credit agreement. For example, the plaintiffs infer fraud from Bank of America's charging an inspection fee purportedly prohibited by a Department of Housing and Urban Development guideline. (Complaints at ¶¶ 70–73)

## III. Economic-loss rule

Bank of America argues (Motions at pp. 10–12) that the economic-loss rule bars a fraud claim resulting from the same facts as a breach-of-contract claim. But *Tiara Condo. Ass'n Inc. v. Marsh & McLennan Co., Inc.*, 110 So. 3d 399 (Fla. 2013), finds the economic-loss rule inapplicable to a tort action based on a purported

---

[5] Also, no well-pleaded facts substantiate the conclusion that each approval was false.

misrepresentation or omission attendant to the formation or negotiation of a contract. *See Tiara Condo. Ass'n*, 110 So. 3d at 412–14 (Canady, J., dissenting) (explaining that *Tiara Condo Association* effectively extinguishes the distinction under Florida law between contract and tort).

**IV. Rule 9(b)**

To state a claim for fraud, a plaintiff must plead facts sufficient to show that the defendant knowingly misrepresented or omitted a material fact, that the defendant intended the plaintiff's reliance on the misstatement or omission, that the plaintiff reasonably relied on the misstatement or omission, and that the plaintiff suffered consequent harm. *Lance v. Wade*, 457 So. 2d 1008, 1011 (Fla. 1984) (describing the elements of fraud). Except for the foreseeable-default claim, which satisfies Rule 9(b), the complaints fail to plead with particularity facts that substantiate the fraud claims.

### A. Foreseeable-default claim

Bank of America allegedly misrepresented to the plaintiffs that a modification requires a default and "advised [the plaintiffs] to refrain from making [] regular mortgage payments." (Complaints at ¶ 37) In fact, either a default or a "reasonably foreseeable" likelihood of default allegedly qualifies a mortgagor for a modification. (Complaints at ¶ 37) Each complaint alleges the name of the Bank of America employee who omitted to mention the foreseeable-default qualification and the day on which the employee failed to disclose that fact. Allegedly relying on Bank of

- 8 -

America's statements, the plaintiffs purportedly "refrained from making their regular mortgage payments." (Complaints at ¶ 39)

Without citing authority that permits considering the "Supplemental Directive" in resolving a motion to dismiss, Bank of America again mentions the "Supplemental Directive" and argues that "HAMP's requirements were public knowledge."[6] (Motions at p. 13 (italics omitted))  Although the evidence might show the unreasonableness of the plaintiffs' reliance on Bank of America's purported misrepresentation, the plaintiffs state a claim based on Bank of America's omitting to mention that a reasonably foreseeable likelihood of default might qualify a mortgagor for a modification.  Also, Bank of America argues (Motions at p. 13) that the plaintiffs fail to plead damages, but the plaintiffs allege, for example, the loss of home equity.[7] (Complaints at ¶ 39)

**B. Document claim**

After the plaintiffs applied for a modification, Bank of America allegedly told the plaintiffs that the application "was stale" and requested that the plaintiffs apply again. (Complaints at ¶ 41)  The plaintiffs allege the conclusion that "these representations were false" but allege no well-pleaded and specific facts to show the

---

[6] From the other side of its mouth, Bank of America argues that it owed no duty to disclose accurately and completely the loan-modification requirements. (Motions at pp. 14–15)

[7] Bank of America correctly observes that a mortgagor in jeopardy of default likely would lose home equity no matter what Bank of America said (or failed to say), but that damages argument requires evidence.

- 9 -

falsity of Bank of America's statements. *See United States ex rel. Clausen v. Lab. Corp. of America, Inc.*, 290 F.3d 1301, 1313 (11th Cir. 2002) ("If Rule 9(b) is to carry any water, it must mean that an essential allegation and circumstance of fraudulent conduct cannot be alleged in such [a] conclusory fashion."). To substantiate the conclusory allegation of falsity, the plaintiffs append to, and cite in, the complaints several affidavits from an unrelated action. In the affidavits, Bank of America employees discuss generally the bank's purported paperwork practices, but the affidavits say nothing specifically about the plaintiffs' applications. Lacking well-pleaded and specific facts that show the falsity of Bank of America's representations, the document claim violates Rule 9(b)'s requirement that the plaintiffs allege "with particularity the circumstances constituting fraud."[8]

### C. Inspection-fee claim

Although difficult to understand, the complaints appear to allege that Bank of America defrauded the plaintiffs by charging an inspection fee prohibited by the Department of Housing and Urban Development's guidelines. (Complaints at ¶¶ 52, 53, 70–74) The plaintiffs offer no explanation how an inspection fee constitutes a "statement" or "omission," how an inspection fee induces reliance, and how a person reasonably relies on an inspection fee. Also, the plaintiffs fail to identify with particularity the fraudulent charges (for example, the complaints allege neither the

---

[8] Also, most of the complaints fail to identify the employee who misrepresented the status of the plaintiffs' documents, and several complaints fail to identify the day of the misrepresentation.

days nor the amounts of the improper fees).[9] *See, e.g.*, *Burgess v. Religious Tech. Ctr., Inc.*, 600 Fed.Appx. 657 (11th Cir. Sept. 2, 2016) (affirming the dismissal of a complaint that failed to allege the day of the purported misrepresentations).

**V. Preemption**

Finally, Bank of America argues that the fraud claims amount to an "impermissible attempt to enforce HAMP guidelines." (Motions at pp. 24–25) In *Miller v. Chase Home Fin., LLC*, 677 F.3d 1113 (11th Cir. 2012), the plaintiff sued a bank for failing to approve a requested modification to which the plaintiff perceived an entitlement under the program. *Miller* holds that Congress conferred through the program no private right to sue a bank for allegedly violating the program's requirements. 677 F.3d at 1116. In these actions, the foreseeable-default claim alleges not that Bank of America violated the program's requirements but that Bank of America omitted to mention a material fact to the plaintiffs. Bank of America's argument fails to mention preemption, but the persuasive weight of authority confirms no preemption by the program of a state-law fraud claim. *See, e.g.*, *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547 (7th Cir. 2012) (Hamilton, J.); *Mathis v. Nationstar Mortg., Ltd.*, 2012 WL 6162233 (S.D. Ala. Dec. 11, 2012) (Steele, C.J.).

---

[9] To the extent the plaintiffs allege that Bank of America "fraudulently applied" a trial payment to an inspection fee, no well-pleaded and specific facts support that allegation.

**CONCLUSION**

Each motion to dismiss is **GRANTED-IN-PART** and **DENIED-IN-PART**. Section 687.0304 bars each oral-approval claim. Also, each document claim violates Rule 9(b)'s particularity requirement, and each inspection-fee claim violates both Rules 8(a) and 9(b). Each plaintiff states a claim based on Bank of America's omitting to inform the plaintiff that a reasonably foreseeable likelihood of default qualifies a mortgagor for a modification.[10]

ORDERED in Tampa, Florida, on February 1, 2018.

*[signature]*

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE

---

[10] The plaintiffs originally sued in one action, 8:17-cv-1534, but the presiding judge severed the claims and required the plaintiffs to sue separately. Before the severance, Bank of America moved to dismiss under Rule 12(b)(6), and the plaintiffs amended the complaint. Consequently the complaints discussed in this order, which differ materially from the amended complaint in 8:17-cv-1534, represent the plaintiffs' second attempt to cure the defects identified by Bank of America. The plaintiffs, who neither move for leave to amend nor request in the responses leave to amend, may not attempt a third time to cure the pleading defects.